# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | Case No. 18-40304 |
| **Gary Adam Winters** ) | |
| ) | Chapter 7 |
| **Debtor.** ) | |

## MEMORANDUM OPINION

Debtor Gary Winters asks the court to dismiss this involuntary case creditor James Reppy filed against him. Winters alleges Reppy's service on him was defective under Rule 1010 of the Federal Rules of Bankruptcy Procedure because Reppy failed to serve him at his dwelling house or usual place of abode. As a result, he asks the court to dismiss this case for lack of personal jurisdiction.

Because the court determines the address served was Winters' usual place of abode, service was proper, and the court has jurisdiction over Winters in this case. Thus, the court DENIES Winters' motion to dismiss.

## JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(a). This matter is statutorily core under 28 U.S.C. § 157(b)(2)(O) and is constitutionally core. The court therefore has authority to hear the matter and make a final determination. No party has contested jurisdiction.

## BACKGROUND

Reppy holds a prepetition judgment against Winters. Unable to collect on that judgment through other means, Reppy filed an involuntary chapter 7 petition against Winters on February 2, 2018.

Reppy's counsel served the summons and involuntary petition on Winters by certified and first-class mail addressed to Gary Adam Winters, at 37652 West US Hwy 210, Richmond, MO 64085 (Richmond, MO address), the address Winters identified on February 1, 2017, as his residential address in sworn answers to state court interrogatories. The certified mail was returned unopened and undelivered, but the first-class mail was never returned. When Winters failed to respond, the court entered an order for relief.

In November 2018, during a hearing on her motion for body attachment, chapter 7 trustee Janice Stanton represented to the court that, though Winters had not appeared at any of several previous § 341 meetings of creditors in the case, she had spoken with Winters on the phone, and had initially thought he would attend a continued § 341 meeting of creditors. But shortly after the phone call, Winters "went dark" and stopped responding to her calls. Since then, Stanton has worked to administer the assets of the estate—including a potential cause of action Winters holds against his insurance carrier for its refusal to pay Reppy's claim.

Winters did not otherwise participate in his involuntary case until he filed the present motion to dismiss the involuntary case in May 2020, more than two years after Reppy filed the involuntary petition. Lawyers funded by Winters' insurance carrier represent him in the motion to dismiss.

The court held a hearing on the matter on July 15, 2020. Though counsel for Winters appeared at the hearing, Winters did not appear. During that hearing, Reppy's counsel played several videotaped excerpts of Winters' June 2020 Rule 2004

examination, giving the court an opportunity to consider Winters' demeanor and credibility (or lack thereof).

The parties agree that Winters' parents live at the Richmond, MO address, and that they lived there at all relevant times. Winters regularly provided the Richmond, MO address as his own, although during his Rule 2004 examination he alleged he and his wife have been homeless since 2014.

Winters' truck is registered to the Richmond, MO address. His driver's license, issued in October 2019, lists the same address. Signed traffic tickets, sworn answers to state court interrogatories, and a signed criminal bond from 2019 all identify the Richmond, MO address as Winters' address. The law firm that has represented him in state court litigation—the same firm representing him in this motion—also has used the Richmond, MO address to communicate with Winters throughout its ten-year engagement. During his Rule 2004 examination, Winters was not able to identify any other address he has used or provided to third parties.

Despite this quantity of evidence, Winters maintains that Reppy's service on him at the Richmond, MO address was defective. Winters testified during his Rule 2004 examination that, at all relevant times and for the past six years, he was homeless and living out of his truck. Additionally, in response to questions at the Rule 2004 examination about his decision to continue listing the Richmond, MO address on documents like parking tickets, Winters stated he arbitrarily listed that address because he was told he needed to provide an address, regardless of where he lived at the time. And in an affidavit Winters signed in early 2020, he states he has

3

not lived at his parents' house for "several years" (though, when pressed at the Rule 2004 examination, he admitted he lived at his parents' house at the time he signed the affidavit).

Overall, the court finds Winters' claims of homelessness at the Rule 2004 examination and in the affidavit unconvincing and lacking credibility. Winters admits he has problems with his memory dating back to an accident in 2003, and his Rule 2004 examination testimony is filled with examples of Winters' inability (or unwillingness) to recall key facts or events. For example, Winters stated that he could not remember where he was when he signed the affidavit or why he was there. The affidavit is not credible because it is self-serving and includes statements that conflict with Winters' admission that he lived with his parents when he signed it. Winters' confusion and inconsistent testimony during his 2004 examination demonstrates that his testimony and the statements in his affidavit are, at best, unreliable. Winters' absence from the July 15, 2020, hearing prevented the court from seeking clarification about the ambiguities and inconsistencies in his positions. Thus, Winters has presented no credible evidence in this case.

## **BURDEN OF PROOF**

When an involuntary debtor contests service, the party issuing service bears the burden of proving service was proper. *Richardson v. Volkswagenwerk, A.G.*, 552 F.Supp 73, 79 (W.D. Mo. 1982) (non-bankruptcy case). Proof of unreturned service to the correct address is prima facie evidence that the service was proper. *Stephenson v. El-Batrawi*, 524 F.3d 907, 912–13 (8th Cir. 2008). If the party issuing service

4

proves the address was correct and the mailing was not returned, then the burden shifts to the involuntary debtor to rebut the presumption that service was proper. *Garcia v. Cantu*, 363 B.R. 503, 511 (Bankr. W.D. Tex. 2006) ("With the presentation of this evidence alone, the burden of going forward with controverting evidence shifted to the Debtor.").

## ANALYSIS

Rule 1010 of Federal Rules of Bankruptcy Procedure requires the creditor filing an involuntary petition to serve the debtor in accordance with Rule 7004. Fed. R. Bankr. P. 1010(a). Under Rule 7004(b)(1), the petitioning creditor may mail the summons and involuntary petition to any of three possible locations: (1) the debtor's dwelling house, (2) the debtor's usual place of abode, or (3) the place where the debtor regularly conducts a business or profession. Fed. R. Bankr. P. 7004(b)(1). If service is defective, the court lacks personal jurisdiction over the involuntary debtor. *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 885 (8th Cir. 1996). Courts liberally construe the service requirements where, as here, the party to be served receives actual notice of the pending action. *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963); *Tropin v. Weitzman (In re Premium Sales Corp.)*, 182 B.R. 349, 351 (Bankr. S.D. Fla. 1995).

In this case, the parties agree that the summons and involuntary petition Reppy sent Winters via first-class mail to the Richmond, MO address were not returned. Thus, the remaining issue is whether the Richmond, MO address was Winters' "dwelling house" or "usual place of abode" under Rule 7004. *See Stephenson*,

5

524 F.3d at 912–13 (stating a summons and complaint mailed to the correct address combined with evidence they were not returned constitutes prima facie evidence of proper service).

The Merriam Webster Dictionary defines a "dwelling house" as a shelter, like a house or building, where someone lives; a "place of abode" as a place where someone either lives or temporarily stays; and the word "usual" as normal or typical. The Merriam Webster Dictionary (11th ed. 2020). In the context of this case, defining the terms usual place of abode and dwelling house to both mean a place where someone lives would make those terms redundant, an outcome the drafters of Rule 7004 likely did not intend under ordinary rules of construction. Further, under its plain meaning, a "usual place of abode" must be a place where a debtor stays at least somewhat regularly—an abode cannot be usual if a debtor has stayed there only once. Thus, a usual place of abode must mean a place the debtor regularly, albeit temporarily, stays. *See Premium Sales Corp.*, 182 B.R. at 354 (determining that service of process at a condominium where defendant and his spouse stayed at sporadic intervals was proper under Rule 7004(b)).

Under Rule 7004, a creditor may serve a debtor either at his or her dwelling house or usual place of abode. Regardless of whether a debtor has a dwelling house, service may also be proper at his or her usual place of abode. Additionally, so long as a reasonable nexus exists between a debtor and the location served, a debtor may have multiple dwelling houses or usual places of abode where service may be proper. *See Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257–58 (2d Cir. 1991)

(determining service was proper at one of twelve locations where debtor spent time); *In re Xacur*, 2019 B.R. 956 (Bankr. S.D. Tex. 1998) ("[I]t is unrealistic to interpret Rule 7004(b) so that the person to be served has only one dwelling house or usual place of abode at which process may be left. . . . [A] person can have two or more dwelling houses or usual places of abode, provided each contains sufficient indicia of permanence.").

Although the Richmond, MO address is not Winters' dwelling house (because he does not permanently live there), service on him there may still be proper if the court determines it his "usual place of abode." Because an abode can only be usual if the debtor stays there at least somewhat regularly, the court must first determine whether Winters has any pattern of staying at the Richmond, MO address.

Here, Winters states the Richmond, MO address is not his "last known address" and that he has not "lived" there for several years. But there is no requirement that a debtor permanently live at an address for it to be a proper address for service. As discussed above, service may be proper at a location where the debtor stays temporarily with some regularity.

Further, Winters is estopped from arguing he has not lived at this address for several years. Despite these broad statements in his affidavit, Winters' sworn statement in his February 2017 answers to interrogatories that the Richmond, MO address was his residential address and had been for at least six months contradicts his statement that he has not lived there. The court may raise equitable estoppel sua sponte to avoid injustice. *Henry Law Firm v. Cuker Interactive, LLC*, 950 F.3d 528,

7

534 (8th Cir. 2020). Equitable estoppel applies when a party (1) makes a false representation or conceals material facts, (2) with either actual or constructive knowledge of the facts, (3) to a party without knowledge or the means of acquiring knowledge of the real facts, (4) with the intention the representation should be acted on, and (5) to a party who relied or acted on it to his or her prejudice. *Willis v. Rice (In re Willis)*, 345 B.R. 647, 651–52 (B.A.P. 8th Cir. 2006). The court will address each element in turn.

1. Winters' conflicting statements about where he lived satisfies the first element of equitable estoppel. Winters initially stated, under oath, that he resided at the Richmond, MO address for at least six months before February 2017. During his 2004 Examination in June 2020, he stated he has been homeless for the past six years. Because these time frames overlap, one of the statements is clearly a misrepresentation of fact. Winters' homelessness, or lack thereof, is a material fact because it forms the basis for the present motion to dismiss. Thus, the first element is satisfied.

2. As to the second element, because the evidence does not demonstrate that Winters' poor memory extends to knowledge of his present circumstances, the court determines Winters had actual knowledge of his then-current residence at all relevant times, including at the time he signed the interrogatory answers in February 2017. Thus, the statement was made with actual knowledge of the facts, satisfying the second element.

3. Regarding the third element, Reppy had neither knowledge of Winters' residence nor a reason to further investigate the truth of Winters' statements. In his answers to the interrogatories, Winters listed the Richmond, MO address as his residential address. Because interrogatory responses are made under oath, the party receiving the answers may rely on their truth without further investigation. Because nothing about these answers should have given Reppy any reason to doubt Winters' truthfulness, Reppy did not have a duty or means to further investigate Winters' address. *See In re Kip and Andrea Richards Fam. Farm & Ranch, LLC*, 2019 WL 4887552 at *10 (Bankr. D. Neb. Sept. 30, 2019), *aff'd* 613 B.R. 699 (B.A.P. 8th Cir. 2020) (determining creditor asserting equitable estoppel understandably relied on schedules and assertions at the meeting of creditors and the creditor had "neither

        reason nor knowledge to explore the issue further"). Reppy therefore lacked both actual knowledge and means of acquiring knowledge of Winters' correct address.

4. By answering Reppy's interrogatory, Winters knew or should have known that Reppy would act on it. The purpose of interrogatories is to "ascertain facts and to procure evidence, or secure information as to where pertinent evidence exists and can be obtained." *U.S. v. Purdome*, 30 F.R.D. 338, 340 (W.D. Mo 1962). Because Winters necessarily knew that Reppy would act on the information provided in his interrogatory responses, the fourth element is satisfied.

5. Finally, Reppy relied on the representation to his prejudice. Armed with the information Winters gave them just a few months earlier in the interrogatory answer, Reppy's counsel mailed the summons and involuntary petition to the Richmond, MO address. At best, this reliance injured Reppy because he now is spending time and resources defending service. At worst, the reliance injured Reppy by placing at risk Reppy's ability to collect on his judgment through a distribution from Winters' bankruptcy estate because the statute of limitations in the state court litigation ran while Winters' involuntary case was pending. In either circumstance, Reppy's reliance prejudiced him.

Because all five elements of equitable estoppel are satisfied, the court determines Winters' 2017 interrogatory response estops him from now arguing he has been homeless for the past six years.

Winters has also previously admitted to staying at the Richmond, MO address periodically over the past three years. As he swore under oath in his February 2017 answers to interrogatories in the state court litigation against Reppy, Winters resided at the Richmond, MO address during at least August 2016 through February 2017. Additionally, at his Rule 2004 examination, he admitted he stayed at the Richmond, MO address for a few months in late 2019 and early 2020, and that he lived there at the time he signed the affidavit. Winters' history of staying there for prolonged periods of time makes it "a place of abode" under the plain meaning of that term.

Because Winters periodically stayed at the Richmond, MO address for temporary periods both before and after Reppy served the summons and involuntary petition there, it fits the definition of "place of abode." And because he stayed there more than once, it may also be "usual" under the common meaning of that term. But "usual place of abode" is still somewhat ambiguous because Rule 7004(b) does not clarify how often a debtor must use a location for it to be "usual place of abode" under the rule. So the question remains: do the circumstances surrounding Winters' use of the Richmond, MO address render it Winters' "usual place of abode" under Rule 7004(b)?

To answer that question, courts consider whether a "reasonable nexus" exists between a debtor and the location served. When making this determination, courts consider how often, and for what purposes, a debtor uses the location served in addition to how often a debtor physically stays there.

Various circumstances may establish a reasonable nexus between an involuntary debtor and his or her alleged dwelling house or usual place of abode. For example, evidence that a debtor's relationship to a location has some degree of permanence may establish a reasonable nexus. *See Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 258 (2d Cir. 1991) (determining defendant owning, furnishing, and remodeling apartment demonstrated sufficient indicia of permanence even though apartment was one of twelve residences defendant owned). Listing an address on official documents is also compelling evidence a reasonable nexus exists between a debtor and that address. *See Garcia v. Cantu*, 363 B.R. 503, 511–13

(Bankr. W.D. Tex. 2006) (concluding service was proper at address debtor used on driver's license and in court documents in related state court lawsuit). Finally, courts often determine a reasonable nexus exists between a debtor and a location where they receive mail. *See First Nat'l Bank & Trust Co. of Tulsa v. Ingerton*, 207 F.2d 793, 795 (10th Cir. 1953) (determining service was proper on transient debtors at hotel where they received mail and kept personal belongings).

Reppy has presented compelling evidence that the Richmond, MO address is Winters' usual place of abode under Rule 7004. As discussed, Winters periodically stayed at the Richmond, MO address both before and after the petition date. In 2019, Winters listed this address on his Missouri Department of Revenue Driver Record, on multiple signed traffic tickets, and on the title for his vehicle issued. He also lists this address on his driver's license and told the DMV to mail his license to the same address. The Richmond, MO address is also the only address the law firm representing him in this case has used to communicate with Winters throughout the decade it has represented him. This evidence establishes a significant nexus between Winters and the Richmond, MO address.

In response, Winters unconvincingly contests service through a self-serving and ambiguous affidavit and Rule 2004 examination testimony that is confusing and inconsistent with the established facts. Using these assertions as evidence, his counsel argues he has no dwelling house or usual place of abode. But as stated above, the court finds Winters unreliable and lacking credibility. Thus, his Rule 2004 examination testimony seeking to undermine Reppy's argument that the Richmond,

11

MO address was proper for service does not persuade the court that Reppy's service was defective. Winters' assertion in his affidavit that he has not lived at that address for several years is similarly unpersuasive. The evidence clearly establishes Winters resided there multiple times over the past several years, often for months at a time—including when Winters signed the affidavit. Thus, Reppy's evidence persuades the court the Richmond, MO address was proper for service, and Winters' affidavit and his attorney's arguments do not persuade the court otherwise.

The court's determination that there is a reasonable nexus between Winters and the Richmond, MO address makes it one proper place for service. But it does not mean the Richmond, MO address is the only proper place to serve Winters. As discussed above, a debtor may have more than one serviceable dwelling house or usual place of abode. Thus, the court's holding does not preclude personal service or service at other dwelling houses or usual places of abode with reasonable nexuses to Winters.

Based on the evidence before it, the court determines the Richmond, MO address was Winters' usual place of abode under Rule 2004 because a reasonable nexus existed between it and Winters in February 2018. Reppy's proof of unreturned service of the involuntary petition and summons to the Richmond, MO address is therefore prima facie evidence of proper service, and the presumption arises that service was proper. Because Winters failed to attend the July 15, 2020, hearing or present credible evidence clarifying the ambiguities and inconsistencies in the evidence before the court, the court determines Winters did not rebut the

12

presumption that Reppy's unreturned service of the summons and involuntary petition was proper. Thus, Reppy's service was proper, and the court has personal jurisdiction over Winters in this case.

## CONCLUSION

For the foregoing reasons, the court DENIES Winters' motion to dismiss the case.

Dated: 9/15/2020 /s/ Brian T. Fenimore
United States Bankruptcy Judge